**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN**

NEXT TECHNOLOGIES INC.,

        Plaintiff,

v.

BEYOND THE OFFICE DOOR LLC d/b/a
BTOD.COM, and GREG KNIGHTON,

        Defendants.

Case No. 19-CV-217

---

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Defendants Beyond the Office Door LLC d/b/a BTOD.com and Greg Knighton (collectively "BTOD" or "Defendants"), by and through their attorneys Meissner Tierney Fisher & Nichols S.C., respectfully submit this brief in support of their Motion for Summary Judgment.

## <u>INTRODUCTION</u>

This action arises out of a BTOD's online product review of desks manufactured by Plaintiff Next Technologies, Inc. ("Next Technologies"). Both BTOD and Next Technologies are in the business of selling office furniture, including standing desks. BTOD also publishes online product reviews and articles on a blog entitled The Breakroom Blog. These reviews are published after BTOD physically inspects and tests selected standing desks. The reviews include all products on the market, even those manufactured by BTOD. BTOD strives to remain "honest about all products, including its own" and focuses "on educating consumers first … [s]howing them the good and bad of all products, even if this [means] recommending

a competitor's product."  Next Technologies, for its part, also has a significant online presence where it criticizes negative reviews and also performs reviews of competitors products, including BTOD products.  (PFOF 36-42.)  In fact, it just recently performed an aggressive review of a BTOD desk which was highly critical of the BTOD product, likening the product to placing "polish on a turd" and "lipstick on a pig."  (PFOF 42.)

This case arises out of two product reviews performed by BTOD on two separate Next Technologies' standing desks – the EvoDesk and the XDesk Terra ("the Terra").  Next Technologies asserts the following causes of action:  (1) Defamation Per Se; (2) Defamation; (3) Tortious Interference with Existing Contractual Relations; and (4) Tortious Interference with Potential Contractual Relations.  The basis for these claims are seven (7) statements made in the Terra article, and four (4) statements made in the EvoDesk article.  None of those claims are actionable under the causes of action alleged.

As to the first two causes of action (Defamation Per Se and Defamation), there are reasons for dismissal.  First, the statements identified are either opinion, true, or substantially true, and thus not actionable.  Second, the statements identified cannot reasonably be interpreted as "charging dishonorable, unethical or unprofessional conduct in a profession" as required for defamation in a business setting.  Third, Next Technologies cannot show the actual malice required given their "limited public figure" status.   As to the last two causes of action (Tortious Interference with Existing and Potential Contractual Relationships), the statements are not actionable because they are matters of public concern and protected by the privilege of competition.  For those reasons, Next Technologies respectfully requests that this Court grant BTOD summary judgment and dismiss all claims on the merits.

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts which "'might affect the outcome of the suit' under the applicable substantive law." *Anders v. Waste Mgmt. of Wisconsin*, 463 F.3d 670, 675 (7th Cir. 2006). The opposing party cannot simply rest on allegations or denials in its pleadings but must also "introduce affidavits or other evidence setting forth specific facts showing a genuine issue for trial." *Id.* Summary judgment is proper against a plaintiff who fails to establish an element of her claim on which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–24. Finally, in conducting its review, the court views all facts and draws all reasonable inferences in favor of the nonmoving party. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

## FACTS

### A.      THE TERRA ARTICLE

On November 1, 2017, BOTD posted a product review article titled "Top 8 Problems and Solutions with NextDesk Terra Standing Desk" (hereinafter "Terra Article"). (PFOF 8.) Next Technologies is critical of seven statements made by BTOD in the Terra Article:

1. Next Technologies claims that BTOD's statement that the Terra has a "front to back rocking motion" equates to a statement that its products "shake, wobble, warp and lack lateral stability." (COMPL. ¶¶ 13-14.)

2. Next Technologies claims that BTOD's statement that the "big portion of the [Terra] frame was a completely different color" is false even though Next Technologies admits that "the columns (legs) of the terra are a different color" than the aluminum frame. Next Technologies claims the statement is "false" because the "columns" (legs) of the desk are not part of the "desk frame." (COMPL. ¶¶ 13-14, 16.)

3. Next Technologies claims that BTOD's statements that the Terra frame incorporates steel components is "false and misleading" because, although the columns (legs) are steel, the rest of the frame is aluminum.  Again, Next Technologies claims the statement is "false" because the "columns" (legs) are not part of the "desk frame."  (COMPL. ¶ 14)

4. Next Technologies claims that BTOD improperly stated that Next Technologies website was NextDesks.com, when it was really www.xdesk.com.  (COMPL. ¶ 14)

5. Next Technologies claims that BTOD falsely stated that its owner, Greg Knighton, "called and left a message for [Next Technologies'] management." (COMPL. ¶ 13).

6. Next Technologies claims that BTOD falsely stated that Terra has "no overload protection or anti-collision system."  (COMPL. ¶ 13-14).

7. Next Technologies claims that BTOD falsely stated that the cost of the Terra was "starting at over $1,600 with shipping included…mostly everything from NextDesk is overpriced."  Next Technologies claims this is false because "Terra starts at $1,497.00 [and] [s]hipping costs are determined by location of the destination by [Next Technologies'] carrier."  (COMPL. ¶ 13-14).

## B.    THE EVODESK ARTICLE

On or about January 16, 2018, BTOD posted a product review article of the EvoDesk

titled "Top 6 Problems and Solutions for the EvoDesk Standing Desk" (hereinafter "EvoDesk

Article"). (PFOF 29.)  Similar to its review of the Terra, BTOD issued a product review of the

EvoDesk.  The Complaint challenges four statements in the EvoDesk Article:

1. Next Technologies alleges that BTOD, when it stated in the EvoDesk article that "[t]he EvoDesk is the lower-end brand from XDesk. . . . and features JieCang Linar technology for the frame" (COMPL. Ex. C p. 2 of 9), falsely "implied" that "EvoDesk is entirely manufactured in China."   (COMPL. ¶ 21.)

2. Next Technologies alleges that BTOD's characterization that the EvoDesk was over-lubricated (a characterization supported in the article by photos) falsely alleged that the lubricant in the desk's columns were "a problem." (COMPL. ¶ 21.)

3. Next Technologies claims that BTOD's statement that JieCang, the manufacturer of the EvoDesk frame, uses a "two-board system" for cost-savings reasons is false because Next Technologies "uses the two-board system because Plaintiff XDesk is confident and stands behind the product and its component parts."  (COMPL. ¶ 21.)

4.  Next Technologies alleges that BTOD's statement that the desk "could [still] be a problem for users who plan to mount accessories from a brand other than EvoDesk" is false because "[a]ll XDesk accessories work with the frame and desk [and] [t]he accessories by XDesk are specifically designed to work with the desk." (COMPL. ¶ 21.)

## C.      SELF-PROMOTING LANGUAGE ON THE NEXT TECHNOLOGIES' WEBSITE

As noted later in this brief, a defamation Plaintiff can be given "limited public figure" status when it publicly touts the quality of its consumer goods.   Next Technologies has certainly done that.   In the Complaint, Next Technologies admits that it promotes itself as "a leading innovator in the design and manufacture of power adjustable height desks, . . . with a high rate of customer satisfaction."  (PFOF 44.)  Next Technologies' website provides that "[t]he goal was simple: to create a new line of adjustable height desks with more stability and more capacity than ever before."  (PFOF 46.)   Next Technologies describes its materials as "awe-inspiring" and claims that the Terra "looks beautiful and works beautifully."  (PFOF 45.)   According to Next Technologies, the original version of the Terra "is still the most awarded standing desk ever."  *(Id.*)

In promoting the EvoDesk, Next Technologies states the following on its website:

**STANDING REVOLUTION** BETTER HEALTH AND LONGER LIVES
A revolution is sweeping across the nation, and it will ultimately move nearly everyone to a new age of standing while working.  Evodesk was founded to prove that people didn't need to compromise to enjoy an electric desk.  In the process, Evodesk has become the most awarded desk in its class in every category.

(PFOF 48.)   Next Technologies touts its brand as a boundary pusher and an "innovation leader with 6 patents and 10 patents pending."  (PFOF 47.)    It describes the EvoDesk as featuring "four column high-stability designs to patented welded steel subframes" with "designs that stir the soul." (PFOF 50.)   Next Technologies further states that it:

disrupted the industry when it unveiled the most stable and powerful desk ever – the Evodesk Pro.  With quad lifting columns and a 500+ pound capacity, electric standing desks entered an era of no limits.

(PFOF 51.)

### D.   NEXT TECHNOLOGIES' REPRODUCTION OF FAVORABLE PRODUCT REVIEW ARTICLES AS ITS SALES PLAN.

"Limited public figure" status can also be conveyed when the defamation plaintiff publicizes positive reviews of its product.  Next Technologies has also done this through the years.  For example, Next Technologies' website includes the following review of the Terra from MAXIMUMPC: "Score of 100 – Kick Ass!  Absolute best-in-class adjustable desk you can buy. . . there's no other sit/stand desk we're [sic] ever used that was this well made."   (PFOF 53.)   A similarly glowing review from Digital Trends provides as follows: "[o]ur favorite high-tech standing desk.  Terra truly shines thanks to its superior build quality, gorgeous design, and sturdy construction.  Its [sic] clean, sophisticated, and wildly dapper." (PFOF 54.)  On its website, Next Technologies describes the EvoDesk as: "the Lamborghini of standing desks.  Super sleek."  (PFOF 55.)   Additionally, a quotation from "PC GAMER" appears, describing the EvoDesk as stable, smooth and "a potent and well-designed sit/stand gaming desk."  (PFOF 56.)

### E.   NEXT TECHNOLOGIES REBUTTAL ARTICLES TO NEUTRAL OR NEGATIVE PRODUCT REVIEWS.

Finally, "limited public figure" status can be conveyed through the defamation plaintiff's attack of negative reviews of its product.  Next Technologies has done this on numerous occasions.  For example, Next Technologies attacked a March 26, 2015 standing desk review by Wirecutter, titled "The Best Standing Desks," and accused Wirecutter of engaging in deception and making "advertisements look like journalism."   (PFOF 57.)

Wirecutter had previously named the NextDesk Terra as its top pick in its August 29, 2013 standing desk product review.  (PFOF 58.)  By 2015, however, the Wirecutter changed its top pick standing desk pick to the Ergo Depot Jarvis because it was "the best standing desk for most people."  (PFOF 59.)  Wirecutter explained that the NextDesk Terra was superior in fit and finish, describing it as quieter and of better-quality materials than the Ergo Depo Jarvis.  (PFOF 60.)  But, Wirecutter concluded that "for most people, the Jarvis offers all of the benefits of the Terra for less than half the price."  (PFOF 61.)  Feeling aggrieved by the demotion, Next Technologies dismissed the legitimacy of the Wirecutter review by comparing Wirecutter to "used car salesmen from the 80's" that pushed kickbacks "in exchange for fake reviews."  (PFOF 62.)

In fact, and presumably in response to the articles which are the subject matter of this lawsuit, Next Technologies recently posted a similar attack of the BTOD product review articles by publishing its own review of the VertDesk v3 sold by BTOD.  (PFOF 63-67.)  In its attack, Next Technologies identifies the purpose of the article as its attempt "to put bad people in their place." (PFOF 64.)    Next Technologies accuses BTOD of having "built a business around promoting false reviews that bash competitors and redirect[s] buyers to their products."  (PFOF 65.)  Ironically, in support of its "review" of the VertDesk v3, Next Technologies cites to a Wirecutter review, which claimed that the VertDesk v3 "ran about 10 to 12 decibels louder" than comparable electronic standing desks.  (PFOF 66.)  Next Technologies then directly compared the EvoDesk to the VertDesk v3, stating that the VertDesk v3 was 8 decibels louder than the EvoDesk.  (PFOF 67.)  Next Technologies then likens the VertDesk v3 to placing "polish on a turd" or "lipstick on a pig."  (PFOF 61.)

## ARGUMENT

**I.    THE TERRA ARTICLE AND EVODESK AND TERRA ARTICLES CANNOT BE REASONABLY UNDERSTOOD TO BE CAPABLE OF DEFAMATORY MEANING.**

The elements of defamation under Wisconsin law are: "(1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the one defamed; and (3) the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her." *Laughland v. Beckett*, 2015 WI App 70, ¶ 22, 365 Wis. 2d 148, 164, 870 N.W.2d 466, 473 (citing *Uecker,* 323 Wis.2d 798, ¶ 8, 780 N.W.2d 216).

A threshold inquiry in any defamation claim is whether "the words complained of are 'reasonably capable of conveying a defamatory meaning to the ordinary mind and whether the meaning ascribed by [the] plaintiff[ ] is a natural and proper one.'" *Id.*, 2015 WI App 70, ¶ 21, 365 Wis. 2d at 164, 870 N.W.2d at 473.   Thus, "the words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered." *Frinzi v. Hanson*, 30 Wis. 2d 271, 276, 140 N.W.2d 259, 261 (1966); *see also Meier v. Meurer,* 8 Wis. 2d 24, 29, 98 N.W.2d 411, 414 (1959).   Courts will not give words a strained meaning but will interpret them in an ordinary manner.  *Smith v. Journal Co.*, 271 Wis. 384, 389, 73 N.W.2d 429, 432 (1955).

### A.    The Statements Contained in the Terra article are true, substantially true, or opinion.

The plaintiff has the burden of proof to establish that a statement is false.  *Denny v. Mertz*, 106 Wis.2d 636, 661 n.35, 318 N.W.2d 141 (Wis. 1982.)  A statement that is true or

substantially true cannot form the basis for a defamation action.  *Meier v. Meurer*, 8 Wis. 2d 24, 29, 98 N.W.2d 411, 414 (1959).  The doctrine of substantial truth provides that "'[s]light inaccuracies of expression' do not make the alleged defamation false."  *Laughland v. Beckett*, 2015 WI App 70, ¶ 23, 365 Wis. 2d 148, 165, 870 N.W.2d 466, 473.  Furthermore, "[a]n expression of opinion generally cannot be the basis of a defamation action."  *Laughland v. Beckett*, 2015 WI App 70, ¶ 27, 365 Wis. 2d 148, 167, 870 N.W.2d 466, 475.  Thus, where a statement of opinion relat[es] to matters of public concern" and "does not contain a provably false factual connotation," it will receive full constitutional protection.  *Terry v. Journal Broad. Corp.*, 2013 WI App 130, ¶ 23, 351 Wis. 2d 479, 505, 840 N.W.2d 255, 266–67(quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695, 2706, 111 L. Ed. 2d 1 (1990).

In this case, the eleven (11) statements which form the basis for Next Technologies' defamation claims (causes of action one and two) are not actionable under Wisconsin law.  When analyzed separately, it is clear that each statement is either opinion, true, or substantially true.  BTOD will address each alleged defamatory statement in turn.

### 1.  Statements Regarding Stability Issues with the Terra.

The Wisconsin Supreme Court has noted that alleged defamatory statements must be viewed in the "context in which they were used and under the circumstances they were uttered."  *Frinzi*, 30 Wis. 2d at 276, 140 N.W.2d at 261.  In the Complaint, Next Technologies alleges that the BTOD's statement that the Terra experiences "stability issues at all heights" equates to a statement that the Terra "shake[s], wobble[s], warp[s] or lacks lateral stability."  (COMPL., ¶ 13-14)  The Terra article, however, says nothing of the kind.  In fact, the article – attached and incorporated as Exhibit A to the Complaint – states that the Terra had "great

lateral stability" which "was so good, it would have easily ranked in the top three most stable" standing desks.  (PFOF 14.)  The Terra article goes on to discuss front to back movement of the desk, characterizing the desk as having a "front to back rocking motion."  (PFOF 15.) While not reproduced in Exhibit A to the Complaint, video embedded in the Terra Article, as viewed online, provides visual context of the "front to back rocking motion" described in the article.[1] (PFOF 16.)

The alleged defamatory statements regarding "lateral stability" are not actionable. First, the Terra article simply does not state that the desk "lacks lateral stability."  Even if it did, that would be an opinion offered by BTOD, not a statement of fact.  Moreover, to the extent that the claim of "front to back rocking motion" can be construed as "lacks lateral stability", the statement is supported by video embedded in the article itself.  Thus, it is true or substantially true, and thus not actionable.

## 2. The Mismatched Color of the "Columns" (Legs) and the "Frame."

Next Technologies next contends that BTOD falsely claimed that "the desk has mismatched color on the columns as compared to the feet and 'the big vertical portion of the frame was a completely different color."  (COMPL., ¶ 13.)  Next Technologies claims this is false because "[t]he entire aluminum frame of the Terra is the same finish [and] [o]nly the columns of the Terra are a different color because they are powder-coated."  (COMPL., ¶ 14.) In fact, Next Technologies admits that "the columns [the desk's legs] of the Terra are a different color" than the frame, (PFOF 9)  but states that any claimed expert in office furniture "would clearly know the difference between a column and entire frame" (COMPL., ¶ 16).   In

---

[1] To view the video, visit: https://www.btod.com/blog/2017/11/01/top-8-problems-nextdesk-terra-standing-desk/.

short, and somewhat unbelievably, this claim turns on whether one considers the "columns" or "legs" of a desk to be part of its "frame."

When construing "whether language is defamatory, the words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered." *Frinzi*, 30 Wis. 2d at 276, 140 N.W.2d at 261. (Emphasis added).   A "frame" is commonly defined as follows:

1.  Something composed of parts fitted and joined together.

2.  A structure that gives shape or support: *the frame of a house.*

*Frame n.*, The American Heritage Dictionary (3rd ed. 1992)(emphasis in original).

The plain and popular understanding of the term "frame," as it relates to a desk, includes the desk legs, crossbar, feet and upper supports.   Photographs[2] included in the Terra Article and depict the desk frame, and clearly show that (as admitted by Next Technologies) the columns are a different color than the cross-bar and feet:



Vertical Lifting Columns, *i.e.*, Desk Legs

(PFOF 9.)

---

[2] To view the photographs as depicted in the Terra Article, visit: https://www.btod.com/blog/2017/11/01/top-8-problems-nextdesk-terra-standing-desk/.

To accept Next Technologies' position, the Court must accept the premise that the desk "legs" are not part of the desk "frame." The premise defies logic. Subtracting the legs from the frame would leave nothing more than a pile of parts wholly unconnected, namely a cross bar, feet and upper supports. Viewing the above photograph, it is evident that, pursuant to its plain and popular meaning of the word "frame", the Terra legs are an integral component that connects the fitted parts and gives the structure and shape to the Terra. Accepting that the desk legs are a component of the desk frame, and accepting Next Technologies' admission in the Complaint that the legs are a different color than the other components of the frame, one can only conclude that the alleged defamatory statement is, in fact, true.

### 3.   The Terra frame "incorporates steel components."

Next Technologies next claim also centers on one's definition of the term "frame." In the Terra article, BTOD claimed that the Terra frame "incorporates steel components." (*See* PFOF 5.) Next Technologies claims that this statement is "false and misleading" because, although the columns (legs) of the desk are steel, the rest of the frame is aluminum. (Compl., ¶ 14.) Again, Next Technologies claims that the statement is "false" because the "columns" (legs) are not part of the "frame." Specifically, Next Technology alleges: "[t]he XDesk's frame is aluminum. The lifting columns are made of steel not the frame." (Compl., ¶ 14; *see also* PFOF 10-11.)

For the same reasons as the preceding section, the BTOD statement must be found true or substantially true. To accept Next Technologies claim, one would have to conclude that the "legs" of a desk are not part of its "frame", and thus BTOD's statements are

demonstrably false.  BTOD submits that this interpretation is not consistent with the plain and popular sense in which the term "frame" is used, and thus not actionable under Wisconsin law.

### 4.   BTOD's reference to NextDesks.com rather than www.xdesk.com

Next Technologies next claims that BTOD made false and misleading statements by referencing Next Technologies' website as NextDesks.com rather than www.xdesk.com. (COMPL., ¶ 14).  This claim fails for two reasons.  First, that statement (even if false) does not in any way harm Next Technologies' reputation, lower it in the estimation of the community, or deter third persons from associating or dealing with Next Technologies.  Second, the statement appears to be substantially true.  Next Technologies rebranded its NextDesk product line to XDesk following a trademark lawsuit with Baker Manufacturing Co. (PFOF 5-7.)  The Joint Motion to Dismiss that lawsuit was filed on June 15, 2017.  (PFOF 6.)  On November 14, 2017, Next Technologies announced a companywide rebranding of its NextDesk line to XDesk.  (PFOF 7.)  The Terra article was published on November 1, 2017 – two weeks before the rebranding.  (PFOF 8.)  Thus, to the extent that it is a statement that can form the basis for a defamation claim, the statement is true or substantially true.

### 5.   The conversations between Greg Knighton and Next Technologies

Next Technologies next alleges that BTOD defamed Next Technologies because Mr. Knighton claimed that he "called and left a message for [Next Technologies] management [and] someone at Next Desk acknowledged [the information on their website] was incorrect." (COMPL. ¶ 13.)  Next Desk claims this was "false and misleading" because "no one from management at XDesk has ever spoken with Mr. Knighton or anyone from BTOD."

(COMPL. ¶ 14.)  Mr. Knighton made several attempts to verify with Next Technologies that the Terra lifting columns were comprised of steel as opposed to aluminum, as suggested on its website.    (PFOF 12.)  While tangible evidence of phone calls cannot be produced, screenshots of online chat communications between Mr. Knighton and Next Technologies demonstrate that a Director at Next Technologies incorrectly represented, in response to a question posed by Mr. Knighton, that the Terra columns were comprised of aluminum.  (*See* PFOF 12-13.) Specifically, the conversation was as follows:

> Q.    Hi Robert.  I was just chatting with Christopher. . . I asked him if the uprights of the NextDesk Terra are steel or aluminum.
>
> A.    They are aluminum, with some steel parts inside.
>
> Q.    So the outer frame/column is made from steel?
>
> A.    I believe that it is made of aluminum.
>
> Q.    Can you verify that.
>
> A.    I just verified that with ***my director.***

(*Id.*)(Emphasis added).

More to the point, however, like the website claim above, the question of whether he did or did not speak to Plaintiff's representative statement does not in any way harm Next Technologies' reputation, lower it in the estimation of the community, or deter third persons from associating or dealing with Next Technologies.  Thus, the statement is not actionable in defamation.

### 6.    No overload or anti-collision protection.

Next Technologies next contends that BTOD's statement that Terra has "no overload protection or anti-collision system" is false because "[t]he Terra does have overload

protection and anti-collision systems in place." (COMPL. ¶ 13-14.) Overload protection is a feature that disables the lifting mechanism encounters if weight in excess of the lifting capacity is placed onto of the desk. (PFOF 18.) In the case of the Terra, BTOD conducted an overload protection test on the Terra. (PFOF 21.) Overload protection should disable if the lifting mechanism encounters weight in excess of the lifting capacity. (PFOF 19.) The lifting capacity of the Terra is listed at 315 pounds. (PFOF 20.) BTOD tested that capacity on the Terra, and the Terra lifted 360 pounds, well in excess of its stated capacity. (PFOF 21.) Thus, the absence of overload protection was confirmed. (PFOF 22.)

An anti-collision system disables the lifting mechanism if a standing desk comes into contact with stationary objects while lifting or lowering. (PFOF 23.) In the case of the Terra, which featured Linak DL4S columns and the CBD6S control box, an anti-collision system requires the addition of a plug-in known as a "dongle." (PFOF 24.) As stated in the Linak DL4S with CBD6S User Manual, "[t]o enable the anti-collision function a little plug called a dongle must be mounted in one of the 2 control ports. The function is only active when the dongle is mounted. – If you remove the dongle again you disable the function." (PFOF 25.) The Terra desk inspected by BTOD did not include a dongle, necessary for anti-collision protection. (PFOF 27.) That fact is confirmed by the photographs below:



<span style="color:red">Anti-collision dongle</span>                    <span style="color:red">Absence of anti-collision dongle</span>

(PFOF 26-27.)

The statements relating to "overload protection" and "anti-collision" in the Terra article were statements of opinion, formed based on investigation performed by BTOD and described in the article itself.   Moreover, the opinion is supported by objective facts referenced confirmed by testing, and thus is true or substantially true.   Thus, they not actionable for defamation.

### 7.   Total cost of the Terra desk, including shipping

Next Technologies claims that BTOD's statement that the Terra desk "start[s] at over $1,600 with shipping included … mostly everything from NextDesk is overpriced" is false and defamatory.   (COMPL. ¶ 13).   The second half of that statement – "mostly everything from NextDesk is overpriced" – is clearly opinion, and thus not actionable.   The first half of the statement is true.   BTOD paid over $1,600, shipping included, for the desk.   (PFOF 28.)   In fact, in the very next paragraph of the Complaint, Next Technologies concedes that it does not determine shipping costs:

> The Terra does not start at $1,600 with shipping included.   The Terra starts at $1,497.00.   Shipping costs are determined by the location and destination by [Next Technologies'] carrier.

(COMPL. ¶ 14).   The allegation is emblematic of the problems with Next Technologies' claims. In one paragraph, Next Technologies claims that a statement is untrue.   In the next paragraph, it admits that it does not set the price of shipping, and thus it has no way of determining whether the alleged statement was, in fact, untrue.   The statement was true, and thus not actionable.

### B.   The Statements Contained in the EvoDesk article are true, substantially true or opinion.

### 1. "EvoDesk is manufactured entirely in China."

Next Technologies claims that the EvoDesk article "implies" that "EvoDesk is manufactured entirely in China", and that this is false and misleading.  (COMPL. ¶ 21)  The article – attached and incorporated in Plaintiff's Complaint – does not make that statement. It states that "[t]he EvoDesk is the lower-end brand from XDesk … and features JieCang technology for the frame."  (PFOF 30.)     The statement in the EvoDesk Article that the EvoDesk incorporates a Chinese manufactured JieCang technology is not disputed by Next Technologies.  Next Technologies even admits in the Complaint that the EvoDesk "incorporate[s] some parts from China."  (COMPL. ¶ 21; PFOF 31-32.)

The article in question simply does not state what Next Technologies contends. Moreover, the statement in the article is true based on Next Technologies' own concession in the Complaint.  Accordingly, to the extent that the article statements are even capable of defamatory meaning, they are true or substantially true, and thus not actionable.

### 2. Over-Lubrication

Next Technologies then quarrels with BTOD's statement that "one of the most common issues with the JieCang frame and Chinese desks in general is over lubrication." (COMPL., ¶ 20.)  (COMPL. Ex. C, p. 3 of 9.)  Plaintiff contends that "[t]hese statements and the fact implied by these statements are misleading because … [t]he lubricant in the columns is not a problem and actually helps the longevity of the lift/column."  (COMPL., ¶ 21.)

The alleged defamatory "statement" by BTOD regarding lubricant is not actionable for two reasons.  First, the statement is one of opinion.  BTOD is claiming that, based on its review of the desk, the desk suffers from over lubrication.   Second, the statement is

supported by investigation performed by BTOD, and is thus true or substantially true.  In support of its opinion, BTOD embedded in the EvoDesk Article is a photograph[3] containing visual evidence of white buildup from lubrication on the EvoDesk vertical columns.  The glides of the vertical columns are located inside the columns.  (PFOF 25.)  Accordingly, in the opinion of BTOD, the problem with over-lubrication is not only centrally located on the glides of the desk, but is streaked all along the lifting column.  (PFOF 36.)  The problem of over lubrication is depicted below, where residue of lubrication is evident throughout the column:



*White build up from lubrication in columns*

The issue presented is, at most, a classic example of a difference of opinion.  That opinion, not capable of being proven true or false, cannot form the basis for a defamation claim.  Moreover, the opinion is supported by objective facts referenced in the story, and thus is true or substantially true.  As such, the statement is not actionable.

### 3.  The "two-board system" and cost savings

---

[3] https://www.btod.com/blog/2018/01/16/top-6-problems-evodesk-standing-desk/

The EvoDesk Article states that the "main reason" JieCang, the manufacturer of the EvoDesk frame, uses a two-board system is "cost savings." (PFOF 36.) The EvoDesk Article goes onto explain why a two-board system is inferior and points out the lack of quality controls present in the control box, as verified by photographic evidence. (*Id.*) Rather than addressing the statements contained in the EvoDesk Article (and whether they are true, false, or opinion), Next Technologies simply alleges that XDesk "uses the two-board system because Plaintiff XDesk is confident and stands behind the product and its component parts." (COMPL. ¶ 21.) Next Technologies did not design or manufacture the two-board system incorporated into the EvoDesk. (PFOF 38-39.) Accordingly, Next Technologies cannot verify that the purpose for using a two-board versus a single board system is for cost savings. Furthermore, to the extent that the statement is false, Next Technologies does not have standing to assert a defamation claim on behalf of Jiecang.

Additionally, BTOD's opinion that the two-board system is inferior and a cost-saving measure is just that – opinion. Next Technologies does not share that opinion, and stands by its product and its component parts. It is not a statement capable of being proven true or false, and thus cannot form the basis for a defamation claim.

### 4. The mount accessories.

Finally, Next Technologies alleges that EvoDesk Article contains false and misleading information that the design of the desk presents problems for users who plan to mount accessories. It specifically points to a statement that "because of the T base design of the desk … where the frame is placed is a problem for users who plan to mount accessories." (COMPL. ¶ 20) As with the other statements, Next Technologies alleges that "[t]he statements

or facts implied by these statements are false and misleading."  This is apparently because "all XDesk accessories work with the frame and the desk ... [and] [t]he accessories by XDesk are specifically designed to work with the desk."  (COMPL. ¶ 21.)   The EvoDesk Article does not provide that accessories can never be mounted upon the EvoDesk.

Next Technologies' primary criticism is that Next Technologies manufactures accessories specifically designed to be used in conjunction with the EvoDesk.  In response to this information, the EvoDesk article now clarifies that "EvoDesk has said that their brand of accessories will fit the underside of the desk surface. We have not reviewed their accessories, so we cannot verify this information."  (PFOF 42.)  However, the article further explains that the design "could [still] be a problem for users who plan to mount accessories from a brand other than EvoDesk."  (PFOF 43.)

Once again, the statement which forms the basis for this claim is opinion.  BTOD is simply stating its opinion that the placement of the frame is a problem for users who want to "mount accessories."  The statement is not capable of being proven true or false, and thus is not actionable.   Moreover, the article now specifically notes Next Technologies' disagreement with the opinion, and has been amended accordingly.  Given that, it is difficult to see how such a statement could be actionable for defamation.

In short, Next Technologies has alleged fourteen (14) different BTOD statements that were allegedly defamatory.  When addressed individually, each statement separately fails to create an actionable defamation claim.  For that reason, the defamation claim set forth in Next Technologies' first two causes of action should be dismissed on the merits.

**II.      NONE OF THE ALLEGED DEFAMATORY STATEMENTS CAN BE REASONABLY INTERPRETED TO CAUSE HARM IN THE BUSINESS SETTING.**

In addition to the problems stated above, Next Technologies' claims fail because, as a business, Next Technologies is held to a higher standard for defamation.  Under Wisconsin law, "a communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." *Converters Equip. Corp. v. Condes Corp*., 80 Wis. 2d 257, 262, 258 N.W.2d 712, 715 (Wis. 1977).   To prove defamatory meaning in a business setting, the communication must "charge dishonorable, unethical or unprofessional conduct in a trade, business or profession [that] are capable of a defamatory meaning."  *Id.* at 263, 258 N.W.2d at 715; *Isaksen v. Vermont Castings, Inc*., 825 F.2d 1158, 1166 (7th Cir. 1987).  The harm "to reputation is important. . . [m]ore is necessary than [establishing] a diminution of transactional opportunities."  *Isaksen*, 825 F.2d at 1166.    Furthermore, merely omitting information or listing some inaccuracies in a communication is insufficient to establish defamatory meaning. *Meier v. Meurer*, 8 Wis. 2d 24, 28–29, 98 N.W.2d 411, 414 (1959).  Not every slight is capable of defamatory meaning.  *Id.*

None of the statements alleged by Next Technologies is capable of defamatory meaning because, at most, Next Technologies alleges that BTOD has omitted information or inadvertently communicated inaccurate information about the Terra and the EvoDesk. BTOD does not assert that Next Technologies is dishonorable, unethical or that it engages in unprofessional conduct in its trade or business.   None of the alleged statements can be reasonably interpreted in that vein.  In fact, as discussed thoroughly in Section I.A., the Terra and EvoDesk Articles merely evaluate the quality of Next Technology products, but do not question the integrity of Next Technologies or challenge its business ethics.   Merely discussing the advantages and drawbacks of a specific product, absent more, is insufficient

to rise to the level of charging dishonorable, unethical or unprofessional conduct and therefore cannot be reasonable interpreted to have defamatory meaning.  For that separate reason, the first two causes of action should be dismissed as a matter of law.

### III.   TO THE EXTENT THAT THE PLAINTIFF CAN ESTABLISH DEFAMATORY MEANING, IT MUST DEMONSTRATE ACTUAL MALICE BECAUSE THE STATEMENTS CONTAINED IN THE TERRA AND EVODESK ARTICLES ARE PROTECTED BY THE CONSTITUTIONAL PRIVILEGE.

Courts apply a three prong test to determine whether a plaintiff is properly categorized limited public figure for the purposes of a defamation action: (1) there must exist a public controversy, (2) the plaintiff's role in the controversy must be more than trivial or tangential; and (3) the alleged defamatory statements are germane to the public controversy. *Bay View Packing Co. v. Taff*, 198 Wis. 2d 653, 678, 543 N.W.2d 522, 531 (Ct. App. 1995). Once it has been established that a plaintiff is a limited public figure, it must prove that the allegedly defamatory statements were made with actual malice.  *Denny v. Mertz*, 106 Wis. 2d 636, 643–44, 318 N.W.2d 141, 144–45 (1982).   Actual malice requires that a statement is made with "knowledge that it was false or with reckless disregard of whether it was false or not." *In re Storms v. Action Wisconsin Inc.*, 2008 WI 56, ¶ 38, 309 Wis. 2d 704, 723, 750 N.W.2d 739, 748.  Reckless disregard is a subjective standard and requires a showing that the statement made "with a high degree of awareness of ... probable falsity." *Id.*

### A.   The EvoDesk and the Terra were the Subject of a Public Controversy Because an Ongoing Debate Existed as to The Quality of the Desks.

A public controversy has been defined as a "dispute or controversy [that] has 'an impact outside of those immediately interested' in the dispute." *Bay View Packing Co. v. Taff*, 198 Wis. 2d 653, 679, 543 N.W.2d 522, 531 (Ct. App. 1995) (citing *Denny*, 106 Wis.2d at 650,

318 N.W.2d at 148).   Where a dispute is "debated publicly and [has] foreseeable and substantial ramifications for non-participants, it [is] a public controversy." *Id.*

Wisconsin courts have found that the quality of consumer goods can form the basis of a public controversy.  *Id.* at 679-680.  Courts in other jurisdictions have explained that product reviews are, by nature, public controversies because they involve matters of particular interest to the public. *Quantum Elecs. Corp. v. Consumers Union of U.S.*, Inc., 881 F. Supp. 753, 764 (D.R.I. 1995)(citing *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 280 (3d Cir. 1980)).  Product reviews enable "citizens to make better informed purchasing decisions by providing information about consumer products." *Id.*  As a result, it "necessary to insulate [product reviewers] from the vicissitudes of ordinary civil litigation in order to foster. . . First Amendment goals" regardless of whether the "particular statements made . . . are precisely accurate." *Id.*  To chill speech related to the quality or efficacy of a product would result in consumers being "less informed, less able to make effective use of their purchasing power, and generally less satisfied in their choice of goods." *Id.*

In the present case, the product review articles published to the Breakroom Blog have the primary purpose of "educating consumers first.  Showing them the good and the bad of all products."  (PFOF 2.)  As *Quantum Elecs. Corp* states, the societal benefit of product reviews is that they assist consumers in making "better informed purchasing decisions by providing information about consumer products."  881 F. Supp. at 764.  Discourse over the quality of the Terra and EvoDesk, as compared to other standing desk options, impacts the consuming public in general.  The specific controversy over attributes of the Terra and EvoDesk will affect a segment of the population, namely those contemplating electric standing desk purchases.

Accordingly, the controversy over the quality and performance of the Terra and EvoDesk will impact persons beyond the immediate participants in the debate. As such, the first element in establishing that Next Technologies is a limited public figure is satisfied.

> B.   **Because Next Technologies Thrust Itself Into the Purview of the Public Controversy the Quality of Its Standing Desks, and its Role in the Public Controversy was more than Tangential, it is a Public Figure.**

To be considered a public figure, a plaintiff must play a "more than trivial or tangential" in a public controversy. *Bay View Packing Co.*, 198 Wis. 2d at 678, 543 N.W.2d at 531. A plaintiff that has "thrust[] [it]self into the vortex of a public issue" and has attempted to "engage public attention so as to influence the outcome of a controversy" is properly characterized as a limited public figure for the purpose of a defamation action. *Denny*, 106 Wis.2d at 645–46, 318 N.W.2d at 145–46. In the context of product reviews, a particularly pertinent factor is a plaintiff's use favorable third-party product reviews in its marketing campaigns. *Quantum Elecs. Corp.*, 881 F. Supp at 765. Courts will also consider the extent that a plaintiff's marketing strategy seeks to emphasize the controversy. *Id.*

For example, in *Quantum Electronics,* the manufacturer of a specific type of air purifier, known as an ozonator, was considered a "limited public figure" where it cited to favorable product reviews in its marketing efforts to prospective clients. *Id.* at 766. In addition to endorsing positive reviews, the manufacturer distributed literature dismissing its critics. *Id.* The plaintiff's substantial effort to control the public narrative regarding the efficacy of its products demonstrated it was not a silent participant in the public debate over its products. *Id.* at 760-61.

Similarly, where a meat distributor launched an ad campaign "for the purpose of attracting customers to its beef sale," it was properly characterized as "public figure." *Steaks*

*Unlimited,* 623 F.2d at 280.  Because the meat distributor's "actions were calculated to draw public attention to the company and to stimulate consumer interest in its product," it "voluntarily relinquished whatever protection it may have possessed as a purely private entity and . . . [was] properly characterized as a public figure." *Id.*

In the present case, Next Technologies has exerted substantial effort in an attempt to control the narrative over the efficacy and quality of the Terra and EvoDesk.  For example, Next Technology describes the Terra as "the most awarded standing desk ever," with "more stability and more capacity than ever before."  (PFOF 45.)  Next Technologies claims that the Terra "looks beautiful and works beautifully."  (*Id.*)  Similarly, Next Technologies describes the EvoDesk as an "innovation leader" and "the most stable and powerful desk ever," with "designs that stir the soul."  (PFOF 46.)

In addition to self-promotion, Next Technologies highlights positive product reviews of its products.   Throughout its website, Next Technologies lifts favorable quotations from product reviews in support of the efficacy of its products.  (PFOF 52.)  These quotations describe the Terra "the absolute best-in-class adjustable desk you can buy."  (PFOF 53).  Other reviews describe the EvoDesk as the "Lamborghini of standing desks."  (PFOF 55).  These and other positive product reviews are calculated to draw customers to purchase its products.

Finally, Next Technologies attacks any product review (not just those that are the subject of this lawsuit) that it interprets as potentially negative commentary on its products.  When Wirecutter magazine named another brand as its top pick, Next Technologies dismissed the legitimacy of the Wirecutter review by comparing it to a "used car salesmen from the 80's" that pushed kickbacks "in exchange for fake reviews."  (PFOF 62.)  Similarly,

Next Technologies has attacked BTOD's competing products by drawing direct comparisons between the products and likening the products to placing "polish on a turd" or "lipstick on a pig."  (PFOF 63.)

Based upon Next Technologies participation in the public controversy on standing desks, there is sufficient evidence to satisfy the second element of the limited public figure test.

C. **The Terra and EvoDesk Articles are Germane to the Public Controversy over the Quality of the Terra and the EvoDesk.**

The thrust of the Terra and EvoDesk Articles is to evaluate the advantages and drawbacks of each product.  The public controversy at issue in this lawsuit is the quality and efficacy of standing desks on the market, including the Terra and EvoDesk.  Accordingly, the third element in the limited public figure test is satisfied.

Because all three elements of the limited public figure test are satisfied, Next Technologies is properly characterized as a public figure.  As such, the statements which form the basis for the defamation claims must be accompanied by actual malice.  In this case, there is no such evidence.  The statements were made in the context of product reviews.  The statements were supported by testing and evaluation.  Next Technologies cannot meet its high burden of showing "actual malice" given its "limited public figure" status.

IV. **NEXT TECHNOLOGIES' CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACT OR PROSPECTIVE CONTRACT FAILS.**

Wisconsin recognizes the tort of interference with contract.  The elements of tortious interference with contract are:

(1) the plaintiff had a contract or a prospective contractual relationship with a third party, (2) the defendant interfered with that relationship, (3) the interference by the defendant was intentional, (4) there was a causal

connection between the interference and damages, and (5) the defendant was not justified or privileged to interfere.

*Briesemeister v. Lehner*, 2006 WI App 140, ¶ 48, 295 Wis. 2d 429, 452, 720 N.W.2d 531, 542.

Wisconsin follows the Restatement (Second) of Torts, which provides that, for interference to be actionable, interference must be improper. *Liebe v. City Fin. Co.*, 98 Wis. 2d 10, 15, 295 N.W.2d 16, 19 (Ct. App. 1980); Restatement (Second) of Torts § 766 (1979).

### A.   There is no Evidence of a Contract or Prospective Contractual Relationship With Any Third Party

Next Technologies has failed to set forth any evidence that the Terra Article or the EvoDesk Article interfered with its contractual or prospective contractual relationships. Next Technologies has not produced a single affidavit from a customer who decided not to purchase a Terra or EvoDesk as a result of the Terra or EvoDesk articles. As such, it has failed to establish the first element of a claim for intentional interference with contract or prospective contract.

### B.   The Statements Contained in the Terra Article and the EvoDesk Article are Protected by the Privilege of Honesty.

The "[t]ransmission of truthful information is privileged and proper." *Liebe v. City Fin. Co.,* 98 Wis. 2d 10, 17, 295 N.W.2d 16, 20 (Ct. App. 1980)(citing Restatement (Second) of Torts § 772 (1979)). As Professor Prosser observed:

> It seems probable, although the question does not appear to have risen directly, that the mere statement of existing facts, or assembling of information in such a way that the party persuaded recognizes it as a reason for breaking the contract is not enough (to create an action for tortious interference with contract), so long as the defendant creates no added reason and exerts no other influence or pressure by his conduct.

As discussed above in Section I.A., the statements contained in the Terra and EvoDesk articles are demonstrably true. As such, the statements are privileged and proper.

C.   **The Statements Contained in the Terra and EvoDesk Articles are Matters of Public Concern and are Therefore Protected by the Constitutional Privilege.**

Next Technologies' Intentional Interference claims fail on identical grounds as its defamation claim.  In the realm of an intentional interference with contract claim, speech addresses matters of public concern if:

> it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public[.]' The arguably 'inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.'

*Dumas v. Koebel*, 2013 WI App 152, ¶ 26, 352 Wis. 2d 13, 28, 841 N.W.2d 319, 327.  (citations omitted).  As demonstrated above, product reviews enable "citizens to make better informed purchasing decisions by providing information about consumer products." *Quantum Elecs. Corp. v. Consumers Union of U.S.*, Inc., 881 F. Supp. 753, 764 (D.R.I. 1995)(citing *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 280 (3d Cir. 1980)).  As a result, it "necessary to insulate [product reviewers] from the vicissitudes of ordinary civil litigation in order to foster. . . First Amendment goals" regardless of whether the "particular statements made . . . are precisely accurate." *Id.*

In the present case, the product review articles are created by BTOD for the purpose "educating consumers" and showing them "the good and bad of all products."  (Toy Aff., Ex. 1.)  The Terra and EvoDesk Articles were published to address a "subject of general interest and of value and concern to the public." *Dumas*, 2013 WI App 152, ¶ 26.  As such, it is properly characterized as a matter of public concern rendering the articles privileged and proper.

**D.     Because BTOD and Next Technologies are Competitors, BTOD's Statements Within the Terra Article and The EvoDesk Article are Privileged.**

It is privileged and proper for a person to intentionally cause another to refrain from entering into a prospective contract or to terminate an at-will contract if:

(a)     the relation concerns a matter involved in the competition between the actor and the other and
(b)     the actor does not employ wrongful means and
(c)     his action does not create or continue an unlawful restraint of trade and
(d)     his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts § 768 (1979).  When a prospective contract or a contract terminable at will is involved, "competition is not an improper basis for interference."  WIS JI-CIVIL 2780 (citing *Liebe,* 98 Wis. 2d 10, 17; *Pure Milk Prod. Coop. v. National Farms' Org.,* 90 Wis.2d 781, 796, 280 N.W.2d 691 (Wis. 1979).)

The purpose of the competition privilege is to encourage and recognize the benefits free enterprise.  Restatement (Second) of Torts § 768 (1979).  Thus, "[s]uperiority of power in the matters relating to competition is believed to flow from superiority in efficiency and service. If the actor succeeds in diverting business from his competitor by virtue of superiority in matters relating to their competition, he serves the purposes for which competition is encouraged." *Id.*  Only when wrongful means are employed is the competition deemed improper.  Wrongful means has been defined by the Restatement to include "physical violence, fraud, civil suits and criminal prosecutions." *Id.*

In the present case, the Terra and the EvoDesk articles are privileged.  BTOD and Next Technologies are competitors in the office furniture industry.  There is no evidence that BTOD employed wrongful means in competing with Next Technologies.  In fact, BTOD strives to remain honest and objective in its product reviews.

The privilege of competition embodies the thrust of the present action.  As evidenced by the allegations of the Complaint, the present dispute is nothing more than a dispute of opinion between competitors in the field of office furniture over the quality and efficiency of standing desks on the market.  BTOD has conducted reviews of the Terra and EvoDesk sold by Next Technologies.  The statements contained in the product reviews are neither deceptive nor fraudulent and merely tout the advantages and drawbacks of the Terra and EvoDesk.  Because the law encourages free enterprise and insulates competitors from claims arising from fair competition, the statements contained in the Terra and EvoDesk Articles are privileged and proper.

## V.      GREG KNIGHTON IS NOT A PROPER PARTY TO THIS ACTION

Wisconsin's Limited Liability Act provides that LLC Act provides that the "debts, obligations and liabilities of a limited liability company . . . shall be solely the debts, obligations and liabilities of the limited liability company." WIS. STAT. § 183.0304(1).  The statute further provides that "a member or manager of a limited liability company is not personally liable for any debt, obligation or liability of the limited liability company, except that a member or manager may become personally liable by his or her acts or conduct other than as a member or manager." *Id.*

In the present case, as illustrated in Exhibit 5 to the Complaint, content of the Terra and EvoDesk articles was created and posted as a function of BTOD.  (PFOF 1-4.)  As BTOD explains in its post "LEARN MORE ABOUT BTOD.COM AND WHY YOU CAN TRUST THE BREAKROOM BLOG REVIEWS" its content is created by individuals acting in their capacity as officers of BTOD.  (PFOF 3.)  More specifically, the BTOD website provides:

> Thank you for taking the time to learn more about The Breakroom Blog.  Our blog was created to provide an honest and transparent resource for those

looking to learn more about office furniture.  Most of our content is created by myself (Greg Knighton) and my business partner, Ryan Bald.  I am the President of BTOD.com and Ryan is our Vice President. The Breakroom Blog also features content from others within our organization and a few guest contributors.

(*Id.*)  As evident from the BTOD website, the content on The Breakroom Blog created by Mr. Knighton is done in his capacity as an officer of the L.L.C.  (*Id.*)  The articles are posted directly to the BTOD website.  (PFOF 4.)

Because there is no evidence that Mr. Knighton was acting in his individual capacity when creating the Terra and EvoDesk Articles, his personal liability is limited by WIS. STAT. § 183.0304(1).

## CONCLUSION

At its core, this is a dispute between competitors, both of whom have an online presence in which they regularly address each other's products and other parties' reviews of their products.  The statements that Next Technologies allege to be defamatory are all either true, substantially true, or statements of opinion.  The claims for tortious interference for contract fail for similar reasons, most prominently the protected privileges of competition.  For that reason, BTOD respectfully requests that this Court dismiss all Plaintiff's claims in their entirety and on the merits.

Dated this 31st day of January 2020.

                    **MEISSNER TIERNEY FISHER & NICHOLS S.C.**

                    By: _____ s/Mark D. Malloy _____
                            Mark D. Malloy
                            State Bar No.  1035066
                            mdm@mtfn.com
                            April K. Toy
                            State Bar No.  1068614
                            akt@mtfn.com
                            **Attorneys for Defendants**